argument is not inextricably intertwined with the qualified immunity analysis. Consequently, this Court lacks pendent appellate jurisdiction over that argument.

In short, the majority should have addressed the four issues presented in this appeal. On the denial of qualified immunity for the protected speech issue, there is no interlocutory appellate jurisdiction, and consequently, there is no need to address the second qualified immunity prong. On the denial of qualified immunity for the procedural due process issues, we have jurisdiction, and I would affirm the district court's reasoning. Finally, we lack pendent appellate jurisdiction over the City of Circleville's appeal. For those reasons, we should have **DISMISSED** this appeal in part and **AFFIRMED** the district court's judgment in part.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0347P (6th Cir.)
File Name: 02a0347p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DALE D. HOOVER,
    *Plaintiff-Appellee,*

    *v.*                    No. 00-4537

PATRICIA RADABAUGH, et al.,
    *Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00339—Algenon L. Marbley, District Judge.

Argued: April 26, 2002

Decided and Filed: October 3, 2002

Before: RYAN, BOGGS, and COLE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Brian M. Zets, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellants. Emily J. Lewis, FARLOW & LEWIS LLC, Dublin, Ohio, for Appellee. **ON BRIEF:** Bridgette C. Roman, SCHOTTENSTEIN, ZOX & DUNN, Columbus, Ohio, for Appellants. Emily J. Lewis, FARLOW & LEWIS LLC, Dublin, Ohio, for Appellee.

BOGGS, J., delivered the opinion of the court, in which RYAN, J., joined. COLE, J. (pp. 14-16), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

BOGGS, Circuit Judge.  In this civil rights action for retaliation against the exercise of protected speech by a public employee, both municipal and individual defendants bring interlocutory appeals challenging the denial of their motions for summary judgment.  We are first asked to determine whether we have jurisdiction, on interlocutory appeal, to consider the denial of defendants' motion for summary judgment on grounds of qualified immunity, when that denial is based on a determination by the district court that a question of fact exists as to the employer's motivation in terminating the plaintiff.  We are also asked whether the rights in question are clearly established as a pure matter of law.  On the first question, we conclude that we lack jurisdiction, and dismiss that portion of the appeal.  On the second question, we affirm the determination of the district court that the rights in question are clearly established.

**I**

Dale Hoover was employed in the Circleville, Ohio, Building Department as a building and electrical inspector. The current action arises out of Hoover's public statements, criticizing the Department, while he was an employee. During the course of his employment, Hoover argued with his supervisor, Allyn Sheldon, over the proper procedures to be used in inspecting buildings.  The disagreements were originally abstract: Hoover believed that the form checklist used by inspectors contained errors that led inspectors to approve noncompliant building projects. Mr. Sheldon did not correct the form.

Consequently, we lack jurisdiction over that portion of appellants' appeal.  Had appellants instead appealed the qualified immunity denial as a matter of law on the basis of the undisputed facts or on plaintiff's version of the facts, we would have jurisdiction to consider their appeal of that issue.

Once it admits that we lack jurisdiction over the protected speech issue, the majority should go no further in considering that argument.  Instead, the majority continues to evaluate the second qualified immunity prong -- whether the federal right at issue is clearly established.  The majority attempts to retain jurisdiction by noting that the second qualified immunity prong involves a pure question of law over which we have interlocutory appellate jurisdiction.  While that may be true, our lack of jurisdiction over the first qualified immunity prong means that there is no need for us to address the second prong, and the majority goes too far by doing so.

The majority next fails to consider appellants' arguments regarding the denial of qualified immunity for Hoover's claimed procedural due process violations.  Because neither of those issues involves disputed questions of fact, we have jurisdiction to consider both arguments here.  Rather than belabor those issues here, I simply note my agreement with the district court's thoughtful treatment of those issues, *see Hoover v, Radabaugh*, 123 F.Supp.2d 412, 422-25 (S.D. Ohio 2000).

Finally, the City of Circleville seeks to have this Court exercise pendent appellate jurisdiction over its claim based on principles of municipal liability.  However, the exercise of pendent appellant jurisdiction is proper only where there is an inextricable link between the pendent appellate claim and the claim over which we have jurisdiction.  *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995); *Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999). Here, because the city's liability depends on an issue separate from the qualified immunity analysis -- whether there was a municipal policy, custom, or practice in place that chilled employees' free speech rights -- the City of Circleville's

_____

**CONCURRING IN PART, DISSENTING IN PART**

_____

R. GUY COLE, JR., concurring in part, dissenting in part. This case presents four issues for our review: (i) whether the district court erred in denying qualified immunity to the individual defendants for terminating Hoover based on his free speech rights; (ii) whether the district court erred in denying qualified immunity to the individual defendants for Hoover's procedural due process claim for lack of notice of a pre-disciplinary meeting; (iii) whether the district court erred in denying qualified immunity for Hoover's procedural due process claims for lack of notice of his ability to appeal his termination; and (iv) whether the district court erred in denying summary judgment to the City of Circleville based on principles of municipal liability. The majority considers only the first issue. Because I believe that all four issues merit some attention, and because I disagree with the scope of the majority's analysis of the first issue, I write separately.

On the first issue, although we decline interlocutory appellate jurisdiction over the denial of qualified immunity for the protected speech claim, we do so because appellants dispute facts in their appeal. Our jurisdiction in an interlocutory appeal of a denial of qualified immunity allows us to consider issues of law in the context of "the undisputed facts or the evidence viewed in the light most favorable to plaintiff." *Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2001), *petition for cert. filed*, 70 U.S.L.W. 3758 (May 28, 2002) (No. 01-1742); *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998) ("A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law."). Despite that limitation, appellants extend their argument beyond the undisputed facts or the evidence viewed in a light most favorable to the plaintiff — they ask this Court to address disputed questions of fact.

Soon after, the disagreement became concrete. Sheldon instructed Hoover to approve several building projects that did not meet code. Sheldon also asked Hoover to perform plumbing inspections that Hoover was not qualified to perform. The Clifton Building dispute involved a plumbing inspection that Sheldon told Hoover to conduct, despite the fact that Hoover was not certified to perform such inspections. Hoover went, under protest, but told Clifton (the owner and a powerful local businessman) that he could only give him an opinion and could not officially approve the site. Hoover returned, later, with a plumbing inspector, Chris Patowski. Patowski informed Clifton that the plumbing was not properly vented.

Clifton then threatened to sue the Building Department. Sheldon permitted Clifton to hide the plumbing defects, to placate him. When the time for the final inspection came, Sheldon misled Patowski, indicating that Hoover had approved the plumbing. The Circleville mayor, Patricia Radabaugh, and Sheldon told Hoover to sign off on the violations and override the violations that Patowski had found. Patowski also found plumbing violations at another site, the Castle Inn project, which included non-insulated plumbing in the attic. Sheldon asked Patowski to conceal the violations; Patowski refused. The Castle Inn was also built without an architect's drawing as required by the Ohio Building Code.

The Boggs Hair Salon was also built without permit or drawing; Hoover found numerous code violations, including a number of fire hazards. The plumbing was improperly vented. Hoover informed Radabaugh and others about the violations but he was nevertheless ordered to sign off on the inspections. Hoover refused, and instead informed Mr. Boggs that he had 90 days to correct the violations. Without a final plumbing inspection and without any correction, Sheldon issued a certificate of occupancy permitting the Salon to open.

As a result of these incidents, Hoover began to voice his concerns publicly.    Hoover spoke to the Building

Department's Advisory Board, which is made up of local builders and realtors, about the Department's improper practices. Hoover contacted Garry Krebbs, the state chief plumbing inspector, to inform him that the Department was concealing code violations. Hoover also went to a city-wide supervisors' meeting, intending to raise his concerns. He believed that the meeting was a public one; it was not. He left when he was informed that the meeting was intended only for designated supervisors. Hoover was disciplined for attempting to attend the meeting.

Radabaugh and Sheldon warned Hoover to stop discussing the Building Department and ordered him to stop publicly discussing the fact that he had been ordered to approve non-compliant projects. Defendants told Hoover that it was inappropriate for him to "spill the bad news all over the community." Hoover was warned that his job was in jeopardy if he continued to criticize the Department publicly.

Sheldon and Hoover had a physical altercation two months later. The parties' descriptions of the incident differ widely; however, they agree on the following. Hoover was photocopying documents in preparation for a lawsuit against the Building Department and Sheldon. Sheldon entered the room. Hoover told Sheldon that he was getting an attorney. Sheldon responded that Hoover should not include his name in the lawsuit. Hoover informed Sheldon that Sheldon was the reason for the lawsuit, and that he would be named as a defendant. Sheldon left the room, but immediately returned. Hoover feared Sheldon was going to destroy the documents. The two shoved each other. Hoover then pushed Sheldon out of the room, and said: "If you come back in here, I'll kill you."

Immediately thereafter, Hoover was given notice of a pre-disciplinary meeting. He signed a form waiving that meeting. Hoover claims that he waived the pre-disciplinary meeting because it had been scheduled too soon for him to get an attorney; his understanding was that the meeting would take place later, when he had procured an attorney. The employee

stating that genuine issues of material fact existed . . . ." *Id.* at 597.

In this case, there is no serious intimation that the district court applied the wrong legal standard in determining reasonableness; what defendants really contest is the preliminary determination, by way of denial of summary judgment, that there is a genuine issue of material fact as to their motivation in terminating Hoover. In order for the question to be purely legal, the defendants must argue that, as in *Boyd*, a different legal standard of reasonableness applies when an employee engages in violent behavior; for example, that it is *per se* reasonable to terminate an employee following a physical altercation no matter what protected activity the employee engaged in, and no matter who is at fault for the altercation; and that the district court employed the incorrect standard in evaluating reasonableness.

The argument is unavailing. We decline to establish a new standard of reasonableness for workplace violence. We agree with the district court that, as a matter of pure law, the rights here are clearly established: a reasonable official would know that terminating an employee with the motivation, even in part, of quieting the plaintiff's public speech about the illegal activities of the Department violates the Constitution. Beyond that, we lack jurisdiction to review the district court's determination as to factual issues as they relate to defendants' actual motivation.

### III

For the above reasons, we affirm the district court's determination that the rights in question were clearly established, and dismiss the remainder of the appeal for lack of jurisdiction.

District Court deemed sufficiently supported for purposes of summary judgment met the . . . standard of 'objective legal reasonableness.'" *Boyd*, 215 F.3d at 597, *quoting Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997). *Boyd* noted: "[W]e believe that the district court's assertion that there were genuine issue[s] of material fact does not destroy the appealability of its qualified immunity ruling . . . ." *Ibid.* Defendants assert that we should hold that their conduct in terminating Hoover met the standard for objective legal reasonableness, because terminating an employee for threatening a supervisor is reasonable as a pure matter of law. On a closer reading of *Boyd*, we disagree with defendants' argument.

In *Boyd*, a civil rights claim was brought against police officers who shot and killed an armed suspect because he aimed a firearm at them. *Id.* at 596. The district court held that the police officers were not entitled to qualified immunity because there was a genuine issue of material fact as to whether it was "objectively reasonable to use deadly force where (1) a suspect is running away from the officers in an attempt to escape; (2) the officers did not witness the suspect fire the weapon; and (3) no verified proof exists as to whether the suspect committed the crime." *Ibid.* The district court applied this "fleeing felon" test, found that there was a genuine issue of material fact as to whether, on this standard, the officers had acted reasonably, and therefore denied the officers' motion for summary judgment on grounds of qualified immunity.

However, as *Boyd* noted, a different legal test for determining reasonableness applies when a criminal does not merely flee, but threatens the life of an officer. The *Boyd* court determined that the district court should have applied a "self defense" rather than a "fleeing felon" standard of reasonableness. The *Boyd* panel distinguished *Hoard* by noting that the district court in *Boyd* had applied the wrong legal standard to determine self defense. *Id.* at 596-97. The *Boyd* court noted that courts of appeals retain "jurisdiction over purely legal questions despite a district court's order

responsible for collecting the waiver, Mr. Starkey, testified that Hoover signed the waiver quickly, but denied that Hoover requested time to seek an attorney. However, Hoover acted consistently with his belief, and called that night to inform Starkey that he could not find a lawyer. Hoover then sought to have the hearing scheduled. No hearing was scheduled, and Hoover was terminated. The stated reasons for his termination were: (1) refusal to carry out work assignments; (2) using insulting, malicious, threatening, or intimidating language to his supervisor; (3) assaulting his supervisor; and (4) engaging in personal work during business. The termination letter did not notify Hoover of his right to appeal, as is required by Ohio law. Hoover did eventually appeal the decision to the Civil Service Commission; his appeal was denied because it was untimely.

Hoover then brought this civil rights action, claiming that defendants violated his First Amendment free speech rights, due process rights, and Ohio public policy in terminating him. He sued both the municipality and a number of individual defendants. The individual defendants moved for summary judgment on the grounds of qualified immunity; the municipality moved for summary judgment on the grounds that there was no city policy to restrict freedom of speech.

Upon evaluating Hoover's speech claim, the district court found that he had sufficiently made out his case to defeat summary judgment because (1) the speech was of public concern; (2) termination would chill such speech; and (3) the defendants' motivation in terminating Hoover was "a question of fact best left to the jury to decide." With respect to Hoover's due process claim, the district court held that his waiver was not knowingly made.

The district court denied defendant's motion for summary judgment on the issue of qualified immunity. The court found that the defendants did not meet their burden of showing that they would have terminated Hoover even if he had not engaged in protected speech. The individual defendants filed

this interlocutory appeal for review of the qualified immunity issue.

While this appeal was pending, Hoover moved for dismissal of the individual defendants' appeal, asserting that this court lacks jurisdiction to hear an interlocutory appeal based on a factual determination made by the district court. Hoover also moved this court to dismiss the municipality's appeal, on the grounds that the municipality may not attach its appeal to the interlocutory appeal by the individual defendants. The motions were referred to the hearing panel.

## II

### A.   Jurisdiction and Qualified Immunity

We are asked to determine whether we have jurisdiction to hear an interlocutory appeal from a district court's decision to deny summary judgment on qualified immunity where, taking the plaintiff's facts as true, there is a genuine issue of material fact as to defendants' motivation in terminating an employee. We hold that we do not.

Jurisdiction in the case stems from 28 U.S.C. § 1291 (1994); this statute grants us jurisdiction to hear appeals from final judgments of district courts. A denial of summary judgment is generally not a final judgment. *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002); *Johnson v. Jones*, 515 U.S. 304, 309 (1995). However, district court denials of qualified immunity may be appealed as collateral orders where (1) the defendant is a public official asserting the defense of qualified immunity, and (2) the issue appealed concerns not which facts the parties might be able to prove, but whether certain alleged facts reflect a violation of clearly established law. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); *Mitchell v. Forsyth*, 472 U.S. 511 (1985). Adding one final wrinkle, the Supreme Court held in *Johnson v. Jones*, 515 U.S. 304 (1995), that circuit courts do not always have jurisdiction over interlocutory appeals from a district court denial of summary judgment on qualified immunity; jurisdiction exists only where the district court's ruling is

speech violation. Under our precedent, we lack jurisdiction to review the determination of a district court when it makes such a factual determination. *Hoard*, 198 F.3d at 218.

### 2.   Clearly Established Constitutional Rights

As noted above, the Sixth Circuit uses a two-part test to determine whether an official is protected by qualified immunity. If a plaintiff's facts make out a constitutional violation, the court must then proceed to determine whether or not that right was clearly established. *Sowards v. Loudon County*, 203 F.3d 426, 438 (6th Cir. 2000). The test for whether a right is clearly established was set out in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982): clearly established rights, for the purpose of qualified immunity, are "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. A right is clearly established if a reasonable official would understand that what he is doing violates that right. Because this question comes to us on interlocutory appeal, we have jurisdiction to review the district court's ruling only if a pure question of law is presented. *Johnson v. Jones*, 515 U.S. 304 (1995).

In this case, the district court stated:

> Reasonable officials, such as the Defendants in this case, would understand, for example, that disciplining, let alone terminating an employee for speaking publically about a matter of public concern violated his First Amendment rights.

Although we lack jurisdiction to review, on interlocutory appeal, a district court's determination that a genuine issue of fact as to the defendant's motivation remains for trial, we retain jurisdiction over the purely legal question of what constitutes a clearly established constitutional right. *Mattox*, 183 F.3d at 519.

Defendants rely on *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000), which held that a defendant may "claim on [interlocutory] appeal that all of the conduct which the

employees were released and not rehired by a newly elected county official; the employees then brought a civil rights action claiming unlawful discharge for party affiliation. *Id.* at 208-09. The defendant moved for summary judgment on qualified immunity. The district court denied this motion, and the defendant appealed. *Id.* at 209-11. The Sixth Circuit held that, because the district court held that a genuine issue of material fact existed as to whether the defendant's refusal to rehire was based on political affiliation, the appeals court had no jurisdiction to consider the sufficiency of the plaintiff's evidence as to defendant's motivation. *Id.* at 218.

In this case, defendants assert a nonretaliatory reason for Hoover's termination: they argue that he was fired solely because of his death threat against Sheldon. However, several pieces of evidence point to a factual conflict regarding the actual motivation of defendants. First, accounts differ as to whether the physical confrontation between Sheldon and Hoover would justify Hoover's termination. By Hoover's description, Sheldon initiated the physical contact, was extremely aggressive and threatening, and may have intended to destroy documents that Hoover intended to use in a lawsuit. Sheldon alleged, in turn, that Hoover was threatening and hostile, that Hoover initiated physical contact, shoved him out of the room, and threatened his life. This is a quintessential factual question.

Further, evidence adduced at trial indicated that Hoover was disciplined for attempting to speak publicly about the actions of the Department. Hoover was censured for attempting to attend the supervisor's meeting. He was warned that his job would be in jeopardy if he continued to discuss publicly the Department's failure to comply with the law. Hoover's termination notice stated that he had been fired for refusing to carry out work assignments. Some of those assignments were those that he had been ordered to approve, had refused, and had then discussed publicly.

The district court ruled that this evidence created a genuine issue of material fact as to the motivation element of a free-

confined purely to questions of law. Therefore, officials may immediately appeal an adverse ruling on their defense of qualified immunity; however, they may only do so if the appeal presents a "neat abstract [issue] of law rather than the question of whether the record demonstrates a genuine issue of fact for trial." *Phelps*, 286 F.3d at 298, quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998) (internal quotations and citations omitted).

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If qualified immunity is applicable, the official is not only immune from damages, but is immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Sixth Circuit employs a two-step process in deciding questions of qualified immunity. First, the court considers whether, on the plaintiff's facts, there has been a constitutional violation. Second, the court considers whether that violation involved "clearly established constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

The crux of this case is the defendants' motivation in terminating Hoover. If they fired him because of his protected speech, qualified immunity should be denied. If they terminated him because of his insubordination, the opposite is true. The district court decided that there was a question of material fact as to whether the defendants entertained impermissible motives in discharging Hoover. We must decide whether this decision as to motivation is a legal or factual one.

Under *Dickerson*, we are first tasked with determining whether the plaintiff's facts spell out a constitutional violation, and then with determining whether that violation was of a clearly established constitutional right. We hold today that we do not have jurisdiction to review the factual

determination of the district court that there was a genuine issue of material fact as to whether or not the defendants entertained unconstitutional motivations.[1]    Because the determination of the district court was factual and did not raise significant legal questions, we dismiss that issue for lack of jurisdiction.

## 1.  Constitutional Violation

The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 122 S. Ct. 2508 (2002), *quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Here, Hoover has stated a claim for a violation of his rights to free speech under the First Amendment.  When a public employee alleges that he was terminated in retaliation for protected speech, we look to three elements.  First, the speech must be constitutionally protected. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  Speech is protected if it is on a subject of public concern, *Connick v. Myers*, 461 U.S. 138, 143 (1983); moreover, the subject matter must be of sufficient importance to outweigh the interest of the state in conducting its affairs in a collegial manner. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  "In striking the balance, courts should consider whether an employee's comments meaningfully interfere with the performance of her duties,

---

[1] *Johnson* does not contemplate whether or not we would have jurisdiction to review, on interlocutory appeal, an utterly incorrect determination by the district court that a genuine issue of material fact existed between the parties. *Johnson* constrained review on interlocutory appeal to legal, not factual, questions.  The determination as to whether or not a genuine issue of material fact exists between the parties is, in truth, a legal determination, although it does involve reference to facts. However, *Johnson* also held that a district court factual decision, including the decision that a genuine issue of material fact exists, is not a "final decision" appealable under § 1291; this was despite the fact that review of that determination would be purely legal.  Because we do not believe, in this case, that the district court incorrectly determined that there was a genuine issue of material fact, we note but do not answer this question.

undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1536 (6th Cir. 1994).  Second, the defendants' adverse action must constitute an injury that would likely chill a person of ordinary firmness from engaging in the protected activity. *Bloch*, 156 F.3d at 678.  Third, "the adverse action [must be] motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Ibid.*

Here, Hoover's speech included informing state officials and citizen boards about the improper procedures being used by the Circleville Building Department.  When an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern. *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999) (wrongdoing by a municipal fire department held to be of sufficient public interest to merit First Amendment protection).  As the district court correctly concluded, the interest in public safety outweighs the state's interest in conducting its affairs collegially.  Termination is an adverse action that would chill speech in a person of ordinary firmness. *Mattox*, 183 F.3d at 521.

The third part of a First Amendment speech claim looks to the defendants' motivation in terminating Hoover.  When the defendants' intent is at issue, "summary judgment is particularly inappropriate." *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir. 1986).  An act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the action would have been proper if taken for a different reason. *Bloch*, 156 F.3d at 681-82.

We find this Circuit's decision in *Hoard v. Sizemore*, 198 F.3d 205 (6th Cir. 1999), dispositive on the question of whether we have jurisdiction to hear an interlocutory appeal from a district court's determination that a genuine issue of material fact exists as to motive.  In *Hoard*, a number of