**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0270n.06
Filed: April 12, 2007

**No. 06-3620**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN McGRAW, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MADISON TOWNSHIIP, et al., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants, | ) | |
| | ) | |
| JERRY JENKINS; JEFFREY ACKERMAN; | ) | |
| ELIZABETH KIRK; DON BOERNER; | ) | |
| MATT BYERS, | ) | |
| | ) | |
| Defendants-Appellants. | | |

**Before: SILER, MOORE and ROGERS, Circuit Judges.**

**ROGERS**, Circuit Judge. Madison Township's Chief of Police Jerry Jenkins and police officers Jeffrey Ackerman, Elizabeth Kirk, Dan Boerner, and Matt Byers raise this interlocutory appeal from the district court's denial of their motion for summary judgment on qualified immunity grounds in a § 1983 action. John F. McGraw alleges that the defendants violated his Fourth and Fourteenth Amendment rights when they surrounded McGraw's home, arrested him, and searched his person, home, and automobile. The officers argue that the district court should have granted them summary judgment because they were responding to a dispatch describing an armed man in a fight with another man. We affirm the district court's denial of the defendants' motion for summary judgment because exigent circumstances did not justify the police conduct in this case, and

dismiss the defendants' remaining grounds for appeal because the court lacks jurisdiction to hear the defendants' arguments that the district court erred in evaluating the record.

On May 20, 2005, McGraw filed a civil complaint against the defendants in this case, alleging that the defendants violated McGraw's Fourth and Fourteenth Amendment rights when they engaged in an unreasonable search and seizure (Count One), engaged in a false arrest (Count Two), falsely imprisoned McGraw (Count Three), and used excessive force against McGraw (Count Four).[1] On January 30, 2006, Madison Township and the defendants filed a motion for summary judgment. On April 25, 2006, in a two-page order that did not discuss the underlying facts of the case, the district court denied the motion for summary judgment, finding that material issues of fact remained. On May 3, 2006, the defendants filed a notice of appeal.

This appeal concerns events that took place at 211 Paradise Boulevard on June 7, 2003. According to McGraw's witness statement and his affidavit, at approximately 3 p.m., Mr. Amerino Calandra arrived at McGraw's home unshaven, with "glassy eyes," and a strong odor of alcohol. Calandra knocked on the door, entered the house, and started to yell at McGraw. Calandra, who had just completed substance abuse rehabilitation, accused McGraw of undermining Calandra's drug business and of saying something about Calandra's wife. There was "yelling and profanity on both sides." JA 115. In an effort to defend himself and his house, McGraw forcibly removed Calandra

---

[1]The complaint originally included Madison Township, the Village of Madison, its Chief of Police Mark Forsyth, and its police officers, Charlie Eisenhart and Jay Thomas; and Lake Metro Parks, its Chief Mike Burko and its ranger John Jay Hurst, as defendants. The complaint also included a count alleging that the Village of Madison failed to train properly its police officers. The district court granted a motion to dismiss as to Madison Township, and on December 16, 2005, McGraw moved to voluntarily dismiss the claims against the Village of Madison, Forsyth, Eisenhart, Thomas, Lake Metro Parks, Burko, and Jayhurst.

2

from the property by reaching for an unloaded pellet gun and, pretending that the pellet gun was a real weapon, pointing it at Calandra. (McGraw subsequently admitted that he owned a real gun, which was in McGraw's locked glove box.)[2]

Calandra "screamed for someone to call the police." JA 176. A neighbor overheard one man at 211 Paradise shout that another man had a gun. The neighbor contacted the police, which dispatched Officers Ackerman, Boerner, and Kirk to investigate a report of an assault at 211 Paradise Boulevard. There is evidence that the dispatcher told the responding officers that two males were fighting in the area and that one of the men "was believed to have a gun." JA 120.

Officer Ackerman arrived at either 211 Paradise or across the street at 212 Paradise shortly after the dispatch. When he arrived, "there was nobody around, nobody appeared to need assistance." JA 182. Ackerman soon identified the woman who called authorities and she confirmed that two males at 211 Paradise were arguing and that one man said that the other man had a gun. Ackerman also spoke with Calandra, who appeared upset. According to Ackerman, Calandra described how McGraw struck him. Calandra then showed Ackerman a red swollen area in the back of his head. McGraw denies ever striking Calandra.[3]

---

[2]Calandra's version of events, which Officer Ackerman described in his affidavit, is similar although not identical. Calandra told Ackerman that McGraw attacked him, put a pistol to his head, threatened to kill him, and struck him in the head.

[3]Ackerman also described how Calandra told him that McGraw was a convicted felon who kept guns in his house. Calandra, however, denies telling Ackerman about McGraw's record.

Officer Ackerman asked the dispatcher to run a criminal history check on McGraw and learned that McGraw had a felony arrest (but not a felony conviction). Officers Boerner and Ackerman also ran background checks on Calandra. They did not search Calandra's vehicle.

Additional officers soon arrived on the scene and set up a perimeter, with Boerner to the south of the house, Ackerman to the west, and Kirk to the north. After establishing the perimeter, they requested mutual aid from the Madison Village Police Department and from the Lake Metroparks Ranger Department. Officer Ackerman then asked dispatch to call the house to ask McGraw to come outside, but soon learned that the dispatcher was unable to reach anyone inside the residence. At that point, Officers Boerner and Ackerman contacted their superior, Sergeant Byers, who arrived at 211 Paradise Boulevard and took control of the situation from Officer Boerner.

Approximately twenty minutes (McGraw's testimony) or approximately forty minutes (Boerner's affidavit) after the initial altercation, McGraw exited the house and walked towards a Ford Crown Victoria in the residence's driveway. At the time, McGraw was not threatening anyone or causing a commotion or disturbance, and officers did not see a gun on McGraw or observe him commit a crime. The officers, however, drew their guns, and Sergeant Byers and Officer Ackerman approached McGraw from the staging area in the west. Officers Boerner and Ackerman then ordered McGraw to get on the ground. McGraw complied.

Once McGraw was on the ground, an officer (whom McGraw is unable to identify) handcuffed him in the "prone position" by cuffing one wrist and then the second behind his back. McGraw testified that an officer pulled his left hand and handcuffed him. Once handcuffed,

4

McGraw needed assistance standing up. Officers escorted him to a police car, and Officer Boerner placed McGraw in the police cruiser. McGraw remained handcuffed in the car for approximately 20 to 30 minutes until officers took him to the Lake County Jail. Although Officers Boerner, Ackerman, and Byers all claim that "no more force than necessary was used at any time," McGraw alleges that "defendants proceeded to use excessive and unusual amounts of force placing and restraining" McGraw, which "caused serious and permanent injuries to him." The officers did not find any weapons on McGraw.

With McGraw in custody, officers interviewed the key witnesses. Officers Ackerman, Kirk, and Boerner spoke with McGraw. Officer Ackerman described how McGraw admitted using an air pistol to threaten and scare Calandra, and Officer Kirk, who took McGraw's witness statement, heard McGraw state, "I should have shot the f[***]er." JA 103, 108. Officer Boerner, meanwhile, took statements from Calandra. Sergeant Byers and Officer Kirk searched McGraw's home, and Officer Kirk found the air pistol that McGraw used to threaten Calandra. Finally, Officer Ackerman secured McGraw's vehicle and Sergeant Byers secured McGraw's residence.

On September 5, 2003, a Lake County Grand Jury indicted McGraw with assault and aggravated menacing for the events that transpired on June 7, 2003. On April 15, 2004, McGraw entered a guilty plea to disorderly conduct and a judge sentenced him to probation on the condition that he not contact Calandra.

Defendants raise two narrow arguments on appeal. First, defendants claim that there is insufficient evidence connecting certain defendants to certain allegations. For example, they claim

5

(correctly) that there is no evidence in the record that Madison Township's Chief of Police Jerry Jenkins was involved in any way in the events at 211 Paradise Boulevard, and that other officers had no connection to certain allegations of wrongdoing. Second, defendants claim that, assuming McGraw's allegations are true, defendants are still entitled to qualified immunity because exigent circumstances justified the search and seizure at issue in this case.

## I. THIS COURT LACKS JURISDICTION TO HEAR SOME OF DEFENDANTS' ARGUMENTS ON APPEAL

McGraw correctly argues that this court lacks jurisdiction to hear claims that certain defendants were not involved in certain counts. The defendants ask this court to overturn the district court's denial of summary judgment because Chief of Police Jenkins was not present at the scene and was not involved in the search or the arrest; Officers Kirk and Byers were not involved in the excessive force claim; Officers Boerner, Byers, and Ackerman were not involved in the illegal search; and there is no evidence that any officer entered McGraw's home. This circuit's case law interpreting the United States Supreme Court's decision in *Johnson v. Jones,* 515 U.S. 304, 319-20 (1995), however, demonstrates that this court lacks jurisdiction to hear these evidence sufficiency claims on an interlocutory appeal.

This court lacks jurisdiction to hear the appeals of Officers Byers, Boerner, and Ackerman because they raise only the issue of the sufficiency of the evidence. The three officers argue that the district court failed to consider each officer's liability individually, and that, had the district court done so, the court would have found that there was no evidence that certain officers were involved in certain of the counts in the complaint. Such an argument appears most clearly to challenge whether sufficient evidence supports the facts alleged by plaintiff. In *Johnson v. Jones*, the Supreme

6

Court held that appellate courts do not have jurisdiction over interlocutory appeals when a defendant, invoking a qualified immunity defense, appeals "a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at 319-20. While this case differs from *Johnson* in that the defendants here, unlike the moving party in *Johnson*, raise an additional argument for which this court has jurisdiction (*i.e.*, that defendants are entitled to qualified immunity accepting McGraw's version of events as true), this court has held repeatedly that it lacks pendent jurisdiction over evidence sufficiency claims. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002) (citing *Hoard v. Sizemore*, 198 F.3d 205, 209, 220 (6th Cir. 1999)); *Farm Labor Organizing Comm. v. Ohio State Highway*, 308 F.3d 523, 536-37 (6th Cir. 2002). *But see Hoard*, 198 F.3d at 223-24 (Batchelder, J., dissenting); *Stanley v. City of Dalton*, 219 F.3d 1280, 1287 n.11 (11th Cir. 2000) (finding that courts may exercise pendent jurisdiction over evidence sufficiency claims when raised along with arguments properly before the court). Because Officers Byers, Boerner, and Ackerman raise sufficiency claims, this court lacks jurisdiction to hear their arguments.

The defendants' efforts to recast their evidence sufficiency claims as a legal argument are without merit. The defendants argue that the district court failed to consider each officer's individual liability and that the process by which the district court decided the motion for summary judgment was flawed. Defs.' Br. at 9-10 (citing *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)). This court has rejected attempts to recast evidence sufficiency claims as legal arguments. *See, e.g., McKenna v. City of Royal Oak*, 469 F.3d 559, 561-62 (6th Cir. 2006) (describing attempts to disguise evidence sufficiency arguments as legal arguments). In *Ellis v. Washington County &*

*Johnson City*, 198 F.3d 225, 229 (6th Cir. 1999), for example, the defendants argued that the district court improperly relied on uncorroborated hearsay evidence when it concluded that genuine issues of material fact existed to prevent summary judgment. This court declined to "look behind a *Johnson v. Jones* type factual dispute to determine [whether] the factual dispute is based only on uncorroborated hearsay that will not be admissible at trial," and found that it had no jurisdiction. *Id.* In this case, similarly, defendants ask this court to determine whether the factual dispute is based on the district court's improper method of determining liability, and, as in *Ellis*, this court lacks jurisdiction to do so.

This court also lacks jurisdiction to hear Chief of Police Kirk's evidence sufficiency claim, although the application of *Johnson* is a bit more complicated with respect to his involvement. The district court issued a two-page order stating that the court engaged in a "thorough review of the briefs . . . affidavits, depositions, and exhibits" and concluded that genuine issues of material fact exist making summary judgment inappropriate. JA 18. The district court did not, however, elaborate on what evidence it found linking Chief of Police Kirk to each count or explain whether it was making legal conclusions (*i.e.,* that Chief of Police Kirk could be liable even if there is no evidence of his being present at the scene) or factual conclusions (*i.e.,* that there was in fact evidence that the Chief of Police was actually present). Our task in such a circumstance is to determine, based on the record before us, whether the district court made a legal conclusion or a factual conclusion. As the Supreme Court explained in *Johnson*, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most

8

favorable to the nonmoving party, likely assumed" to determine whether the district court "mistakenly identified clearly established law." 515 U.S. at 319.

In determining whether a legal or factual rationale drove the court's decision, we turn to defendants' arguments before the district court. In moving for summary judgment, defendants never argued that Chief of Police Kirk was not involved, even though such an argument might have been successful given that there is no evidence in the record that Kirk was present. Because the district court never heard arguments about Chief of Police Kirk's lack of involvement, it is unreasonable to read the terse district court order as suggesting that Kirk could be liable even though he was not present. Conversely, because the record reflects that there was confusion surrounding the events at issue in this case, it is on balance easier to assume that the district court found material issues of fact surrounding the extent of Chief of Police Kirk's involvement. Accordingly, the district court most likely made a factual assumption about Chief of Police Kirk's involvement instead of a legal conclusion that he could be liable even if not directly involved, and this court accordingly lacks jurisdiction to hear his evidence sufficiency claim. *Hoover*, 307 F.3d at 467.[4]

## II. INTERPRETING THE FACTS IN THE LIGHT MOST FAVORABLE TO McGRAW, DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

While this court lacks jurisdiction to hear the defendants' evidence sufficiency claims, it does have jurisdiction to consider a qualified immunity claim that, assuming all of McGraw's allegations

---

[4]Although this court lacks jurisdiction to reverse the district court's denial of summary judgment in this case, the district court may reconsider its decision to deny summary judgment as the record develops. If additional discovery establishes that certain officers were not sufficiently involved in some of the activities of June 7, 2003, the district court may consider granting summary judgment to such defendants on the basis of qualified immunity.

9

are true, exigent circumstances justified the search and seizures at issue in this case. *Johnson* does not prevent courts from hearing interlocutory appeals involving the purely legal question of whether a constitutional requirement is clearly established, *Sanderfer v. Nichols*, 62 F.3d 151, 153 n.2 (6th Cir. 1995) (distinguishing *Johnson*), regardless of the district court's reasons for denying summary judgment. *Wilhelm v. Boggs*, 290 F.3d 822, 825 (6th Cir. 2002). Although this court has jurisdiction to hear this claim, case law from this circuit does not support defendants' position.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). There are two steps in the analysis: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). "Throughout the analysis the burden is on the [plaintiff] to show that the defendants are not entitled to qualified immunity." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (citing *Silberstein v. Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

The defendants' appeal in this case is a very narrow one. They do not challenge the district court's conclusion that material issues of fact remain as to McGraw's excessive force claim. Similarly, the defendants do not argue that exigent circumstances justify the defendants' imprisonment of McGraw. The defendants do not challenge the district court's conclusion regarding McGraw's arrest and seizure claims. Finally, the defendants do not dispute that illegal searches, seizures, and arrests constitute clearly established constitutional violations. The only issue that

10

defendants identify in their brief is whether "There Were Exigent Circumstances For The Warrantless Search." Defs.' Br. at 10. With factual disputes resolved in favor of plaintiff, case law from this circuit establishes that there were no exigent circumstances.

This case is materially indistinguishable from *United States v. Saari*, 272 F.3d 804 (6th Cir. 2001). In *Saari*, police officers responded to a call regarding "shots fired" at a residence. *Id.* at 806. Upon arriving, officers learned that shots had not been fired but that Michael Saari was standing in his ex-wife's window with what appeared to be a pistol in his hand. *Id.* Officers knocked forcefully on the door and, with guns pointed at Saari, instructed him to step outside. *Id.* at 807. They handcuffed him and entered his apartment. *Id.* In finding Fourth Amendment violations that justified the suppression of evidence, this court held that exigent circumstances did not justify the seizure of Saari. *Id.* at 810. The court noted that Saari "did not represent an immediate threat to the officers or to the public" because Saari "was peaceably occupying his home when the officers arrived, and there was no proof that anyone was being threatened inside." *Id.* Thus, "[w]ithout the threat of immediate danger that would have given rise to exigent circumstances, the officers' safety did not require them to summon [Saari] out of his house at gun point before obtaining an arrest warrant." *Id.* at 812.

*Saari* demonstrates that exigent circumstances did not exist in this case, on the facts asserted by plaintiff. Like Saari, McGraw did not represent an immediate threat to the officers or to the public, even though he, like Saari, may have been armed. Like Saari, McGraw threatened no one inside the residence. (While Saari remained in his home and McGraw exited, it is unreasonable to expect a person to remain forever in his home surrounded by armed police officers.) Simply put,

11

McGraw took no action that caused officers to fear for their safety or for the safety of others, nor was there an indication that McGraw was going to flee. As a result, there were no exigent circumstances, at least under the facts alleged by plaintiff.

The facts of this case also differ from cases in which this court found exigent circumstances. In *Hancock v. Dodson*, 958 F.2d 1367, 1369 (6th Cir. 1992), for example, this court found exigent circumstances when officers responded to an "incident involv[ing] a man with a gun, who was suicidal, possibly homicidal, and threatened to kill any officer who attempted to intervene." In *Ewolski v. City of Brunswick*, meanwhile, exigent circumstances existed in a "potential stand-off situation" involving a "paranoid schizophrenic [who threatened] any police officer [who] tried to commit him to a mental facility." 287 F.3d 492, 497-98 (6th Cir. 2002). Here there was no threat of future violence, and the facts, taken in the light most favorable to McGraw, show that the argument between McGraw and Calandra had ended.

The remaining case that defendants cite, *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996), does not demonstrate that exigent circumstances existed. In *Rohrig*, this court created a "new exigency that justifies the warrantless entry into [someone's] home" when officers encounter "an ongoing and highly intrusive breach of a neighborhood's peace in the middle of the night." 98 F.3d at 1519. This case, in contrast, does not involve an ongoing breach of the peace because the facts, interpreted in the light most favorable to McGraw, demonstrate that the altercation had ended.[5]

_____

[5]Although the defendants contend that exigent circumstances justified their creating a perimeter, searching the outside of the house, and, after McGraw exited, frisking him for weapons, such arguments do not justify arresting McGraw. Clearly, officers were justified in arriving at the scene and securing the location after hearing of an assault by an armed man at that location. In addition, after McGraw exited the house, officers were justified in determining whether he was

Accordingly, we AFFIRM the district court's denial of the defendants' motion for summary judgment insofar as it is based on the alleged presence of exigent circumstances, and otherwise DISMISS the interlocutory appeal for lack of jurisdiction.

---

armed and presented a danger to authorities. McGraw's complaint, however, is not limited to the search of the exterior of his home or the *Terry* frisk for weapons. Indeed, McGraw does not appear to complain about the establishment of a perimeter, the plain-view search of his home, or the *Terry* frisk.