97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joyce Brooks JANES, Plaintiff-Appellant,
v.
BARDSTOWN CITY SCHOOLS BOARD OF EDUCATION et al.,
Defendants-Appellees.
 No. 95-5531.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1996.
 
 On Appeal from the United States District Court for the Western District of Kentucky, No. 93-00349; John G. Heyburn, II, Judge.
 W.D.Ky.
 VACATED IN PART, AFFIRMED IN PART.
 Before: GUY, NELSON, and BATCHELDER, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an appeal from a judgment for the defendants in an employment discrimination case. The plaintiff, Joyce Brooks Janes, alleges in her complaint that she was denied consideration for appointment to a teaching position in the public school system of Bardstown, Kentucky, because she sent her children to parochial schools and not to the Bardstown public schools. The complaint asserts that in so excluding her from consideration, the defendants--the public school system's board of education, the individual members of the board, and the system's superintendent and assistant superintendent--infringed upon the exercise of her right to "familial privacy," among other things, in violation of 42 U.S.C. § 1983 and in violation of Kentucky law. As amended, the complaint also asserts claims of age discrimination under § 1983 and under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., as well as a claim of religion-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.
 
 
 2
 The district court dismissed the age discrimination claim for failure to exhaust administrative remedies; granted summary judgment to the defendants on the other federal claims; and dismissed the pendent state claims without prejudice. We conclude that a genuine issue of material fact is presented with respect to the claim that the defendants violated Mrs. Janes' federal constitutional right to direct the education of her children. We shall vacate the district court's judgment insofar as that claim and the pendent state claims are concerned, while affirming the rest of the judgment.
 
 
 3
 * In June of 1992 Mrs. Janes applied for a job as an elementary school music teacher in the Bardstown city schools. Mrs. Janes, a Roman Catholic, had been teaching music for six years in the Catholic school system. She had previously taught music in the public schools. All of Mrs. Janes' school-aged children were enrolled in the parochial schools at the time she applied for the job in question here.
 
 
 4
 Bardstown's assistant school superintendent, defendant Patrick Hagan, reviewed some 19 applications that had been submitted for the vacant position in the music department. Dr. Hagan forwarded the names of five applicants--not including Mrs. Janes'--to the elementary school principal, Merrylen Sparks. After interviewing four of the applicants (the fifth had withdrawn), Ms. Sparks selected a woman named Jennifer Beaver for the job. Ms. Beaver had been teaching for about one year, and none of the other people interviewed had much more teaching experience than Ms. Beaver did.
 
 
 5
 After learning that she was not to be hired, Mrs. Janes had a meeting with Dr. Hagan. According to an affidavit subsequently filed by Mrs. Janes with the Equal Employment Opportunity Commission, Dr. Hagan (who, like Mrs. Janes, is a Roman Catholic) first told her that she had not been granted an interview because she was overqualified for the position. Later in the conversation, according to Mrs. Janes, Dr. Hagan said this: "May I be perfectly blunt? You were not granted an interview because your children attend the parochial school system and, if you do not think our system is good enough for your children, you have no right to teach here." Dr. Hagan allegedly went on to say that no teachers with children in parochial schools "have been hired in the last five to six years because I've seen to it."
 
 
 6
 Dr. Hagan recounts the conversation somewhat differently. When Mrs. Janes asserted that she was the most qualified person for the job, according to Dr. Hagan, he told her that her experience was not an advantage. Because of her many years of teaching, he explained, the school district would have to pay her much more than it would have to pay a less experienced applicant. He also suggested that less experienced teachers could adapt more easily to Kentucky's recent educational "reforms." A further disadvantage cited by Dr. Hagan was that Mrs. Janes' private school teaching experience would not transfer well to a public setting. "Even her experience as a parent," Dr. Hagan added, "was all private." Dr. Hagan did not recall having made the statements that Mrs. Janes attributed to him about disqualification by reason of parochial school patronage.
 
 II
 
 7
 We must take it as given that parents have a constitutional right to send their children to private schools. See Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925), where the Supreme Court characterized as "entirely plain" a constitutionally protected "liberty of parents and guardians to direct the upbringing and education of children under their control." Cf. Wisconsin v. Yoder, 406 U.S. 205, 213 (1972). And established precedent teaches that a state may not ordinarily condition the exercise of this right upon the surrender of an opportunity for public employment. See Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir.) (retaliation against school employee who placed child in private school violates rights "protected under the First Amendment and the penumbra of familial privacy rights recognized by the Supreme Court"), cert. denied, 498 U.S. 940 (1990), and Stough v. Crenshaw County Bd. of Educ., 744 F.2d 1479 (11th Cir.1984) (school board policy prohibiting employees from sending children to private schools interferes with employees' exercise of their constitutional right to control the education of their children). See also Perry v. Sindermann, 408 U.S. 593 (1972) (nonrenewal of teaching contract because of teacher's exercise of First Amendment rights violates the Constitution), and Littlejohn v. Rose, 768 F.2d 765 (6th Cir.1985) (refusal to rehire non-tenured teacher would violate constitutionally protected right of privacy if based on teacher's divorce), cert. denied, 475 U.S. 1045 (1986).
 
 
 8
 Here the district court justified its summary disposition of Mrs. Janes' § 1983 parental rights claim on the ground that the decision to hire a less experienced person was unquestionably economic in nature, there being no dispute that the board made it a practice to hire only persons with less than three years' experience. Upon de novo review of the record, however, we conclude that there is a genuine issue of fact as to the reason Mrs. Janes was not considered for the job.
 
 
 9
 The plaintiff's affidavit clearly supports an inference that she was deemed disqualified because she did not send her children to the public schools. And Mrs. Janes' statements are corroborated by an affidavit from one Lynn Bowling. Ms. Bowling states that Dr. Hagan told her, anent Mrs. Janes, that the school had an unwritten policy of not hiring people who sent their children to other school systems. An affidavit executed by Linda Dickerson, a substitute aide in the Bardstown school system, also lends credence to Mrs. Janes' assertions. Ms. Dickerson states that when she sought a full-time teacher's aide position, Dr. Hagan told her that because her children attended parochial schools he could not help her obtain the position.
 
 
 10
 It is true that if the school system actually did have a fixed policy against hiring anyone with more than three years' experience, the failure to hire Mrs. Janes could not have been "caused" by the exercise of her constitutionally protected familial rights. In that event her claim would fail regardless of what Dr. Hagan might have said to her. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 286-287 (1977). We do not believe, however, that the defendants have set forth sufficient evidence of such a policy to warrant summary judgment.
 
 
 11
 Mrs. Sparks stated that "usually" the school hired those "on the lower end of the ... salary scale." Defendant Robert Smotherman, the school superintendent, characterized lengthy teaching experience as a consideration "of major importance," but not the only consideration. Dr. Hagan stated that 71 percent of those hired in the last several years had no more than three years' experience. The evidence, as we read it, demonstrates only a preference for less expensive teachers, and not a firm bar to the hiring of more expensive teachers.
 
 
 12
 Nor does the statistical evidence relied upon by the defendants conclusively disprove Mrs. Janes' claim of impermissible discrimination. The statistics show that a large percentage of the public school employees are Catholics and that a number of the system's teachers send their children to parochial schools. What is not clear from the record, however, is how many of the applicants hired since Dr. Hagan's alleged policy supposedly went into effect were sending their children to parochial schools at the time they were hired.
 
 
 13
 The defendants assert that between June 1, 1991, and October 15, 1992 (the period deemed relevant for purposes of Mrs. Janes' EEOC complaint), the district hired 34 individuals; that 16 of the 34 were Catholic; that 5 of the 16 Catholics had school-age children; and that 4 of these sent their children to parochial schools. The plaintiff, however, denies that one of these employees--Joey Downs--had his children in parochial schools at the time he was hired. Of the other three employees, she says that one was a cafeteria worker, one was a bus driver, and only one was a school teacher. If only one successful applicant for a teaching position had children in the parochial schools when she was hired, it does not seem to us that the statistics are all that helpful to the defendants.
 
 III
 
 14
 Title VII makes it unlawful for an employer "to fail or refuse to hire ... any individual ... because of such individual's ... religion...." 42 U.S.C. § 2000e-2. The statute likewise makes it unlawful to "limit, segregate, or classify ... applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's ... religion...." Id.
 
 
 15
 We agree with the district court that there is no evidence here that the Bardstown school system had a practice of discriminating against Catholics. On the contrary, the record reveals that 40 percent of the system's employees are Catholics and that 48 percent of those hired between June 1, 1991, and October 15, 1992, are Catholics. Nor is there any evidence that Mrs. Janes individually was discriminated against because of her Catholic faith. Accepting the affidavits presented by Mrs. Janes at face value, they tend to show only that Bardstown school system excluded her from consideration because she sent her children to school elsewhere--not because she is a Catholic.
 
 
 16
 It is true that Title VII defines religion broadly, extending protection to "all aspects of religious observance and practice, as well as belief...." 42 U.S.C. § 2000e(j). But the record before us does not demonstrate that in sending her children to parochial schools Mrs. Janes was engaging in the type of "observance or practice" entitled to protection under the Act. Neither does the record show that she was motivated by religious belief. She has presented no evidence that her faith calls upon her to patronize parochial schools. She and her husband may have made the choice they did for the purpose of obtaining a religious education for their children, as alleged in paragraph 11 of the verified complaint, but a preference for such an education need not itself be an aspect of religious observance, practice, or belief.
 
 IV
 
 17
 The court dismissed the ADEA claim on the ground that Mrs. Janes had not exhausted her administrative remedies. Under 29 U.S.C. § 626(d) a complaint must be filed with the EEOC within 180 days of an unlawful practice (or with the state agency within 300 days) in order to maintain a private action under the ADEA. Mrs. Janes did not complain of age discrimination to the EEOC during the applicable time period. There are no grounds for equitable tolling of the requirement, and the dismissal of the ADEA claim was proper.
 
 
 18
 Mrs. Janes may not bring her ADEA claim under § 1983. The detailed statutory remedy created by the ADEA constitutes the exclusive means for enforcement of the Act. See Zombro v. Baltimore City Police Dept., 868 F.2d 1364, 1366-69 (4th Cir.), cert. denied, 493 U.S. 850 (1989).
 
 V
 
 19
 The defendant board of education argues that it should be dismissed because it is not responsible for the actions of its employees and because it is entitled to Eleventh Amendment immunity.
 
 
 20
 For a school board to be found liable for the acts of an employee under § 1983, the acts of the employee must have been "in accordance with some official policy or custom of the board." Kitchen v. Chippewa Valley Schs., 825 F.2d 1004, 1013 (6th Cir.1987), citing Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). The district court did not reach the issue of whether such a policy or custom could be said to exist here, and we decline to decide the issue for the first time on appeal.
 
 
 21
 Similarly, we decline to decide for the first time on appeal the school board's entitlement to Eleventh Amendment immunity. The resolution of this question requires a fact-based inquiry into the structure of the Kentucky educational system, and it would be inappropriate for a court of appeals to make such a determination in the first instance. See Hall v. Medical College of Ohio at Toledo, 742 F.2d 299 (6th Cir.1984), cert. denied, 469 U.S. 1113 (1985). We note, however, that three different federal district judges in Kentucky have examined the Kentucky educational scheme and concluded that school boards are not entitled to Eleventh Amendment immunity as agencies of the state. Doe v. Knox County Bd. of Educ., 918 F.Supp. 181 (E.D.Ky.1996) (Coffman, J.); Tolliver v. Harlan County Bd. of Educ., 887 F.Supp. 144 (E.D.Ky.1995) (Bertelsman, J.); Blackburn v. Floyd County Bd. of Educ., 749 F.Supp. 159 (E.D.Ky.1990) (Hood, J.).
 
 VI
 
 22
 Because we have kept the plaintiff's action alive in regard to one of her federal claims, we must vacate the dismissal of the pendent state claims. On remand the district court may consider whether jurisdiction over those claims is appropriate in light of our decision here.
 
 
 23
 The dismissal of the plaintiff's claim for interference with her right to direct and control the education of her children and her pendent state claims is VACATED, and the case is REMANDED for further proceedings with respect to those claims. The district court's disposition of the remaining claims asserted by the plaintiff is AFFIRMED.
 
 
 24
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 25
 I concur in all of the court's opinion except its conclusion that plaintiff's § 1983 cause of action should be remanded for further proceedings.
 
 
 26
 Although plaintiff asserts multiple theories of action, this is a failure to hire case. Plaintiff claims she was not hired because her children attend parochial school. The defendants counter by claiming that she was not hired because another teacher who could do the job equally well was hired at a lesser cost. As I view this record, plaintiff has failed to demonstrate that if allowed to go to trial she could prove the defendants' proffered reason for not hiring her was pretextual. Unless she can get over this hurdle, it is unnecessary to consider her constitutional theories. I would affirm the decision of the district court in its entirety.