concluded that prisoner liberty interests generally are limited to "freedom from restraint" that "imposes atypical and significant hardship." *Id.* at 484.

Virgili is a prison guard, not a prisoner, and it is unclear how *Sandin* affects a non-prisoner's assertion that prison rules give rise to a liberty interest.[2] We note, however, that a rule governing searches of prison guards may implicate many of the same prison management issues that concerned the Court in *Sandin.* Ultimately, in light of *Sandin*, we conclude that Virgili's Fourteenth Amendment rights against the strip-search cannot be said to have been "clearly established" in 1999 such that a reasonable prison official would have noticed that his actions violated a constitutionally-protected right. Accordingly, defendants are entitled to qualified immunity as to Virgili's Fourteenth Amendment claim.

**AFFIRMED**.

---

[2]The Supreme Court's reasoning in *Davis v. Scherer* further complicates this analysis. *See* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0412P (6th Cir.)
File Name: 01a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JANET VIRGILI,
      *Plaintiff-Appellant,*

v.                                        No. 00-3371

MICHELLE GILBERT, JOHN
MORRISON, and JOSEPH MASI,
      *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01786—Patricia A. Gaughan, District Judge.

Submitted: September 11, 2001

Decided and Filed: November 30, 2001

Before: SILER, CLAY, and GIBSON, Circuit Judges.[*]

---

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

—————————————

## COUNSEL

**ON BRIEF:** Alan S. Belkin, Cleveland, Ohio, for Appellant. John B. Kahle, ASSISTANT ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

—————————————

## OPINION

—————————————

SILER, Circuit Judge.  Plaintiff Janet Virgili appeals the district court's grant of judgment on the pleadings in favor of defendants Michelle Gilbert, John Morrison and Joseph Masi. Virgili challenges the district court's ruling that defendants are entitled to qualified immunity because her Fourth Amendment right against a strip-search was not "clearly established" at the time of search.  We **AFFIRM**.

## I.  BACKGROUND

At all times relevant to this action, Virgili, Morrison and Masi were employees of the Mansfield Correctional Institution ("Manci") and Gilbert was an Ohio State Highway Patrolman assigned to Manci.   According to Virgili, defendants strip-searched her at Manci on June 16, 1999, without "reasonable suspicion" of illegal activity.

Virgili further alleges that the search violated the terms of a 1990 settlement agreement between the Ohio Civil Service Employees Association, the director of the Ohio Department of Rehabilitation and Corrections, and other individuals.  In particular, Virgili claims that defendants violated terms of the agreement that: (1) require reasonable suspicion for all strip-searches of prison employees, (2) allow a searched employee to have the witness of her choice present at the search, and (3) require prison authorities to provide a written statement of the basis for the search.

Amendment against a strip-search was not clearly established at the time the search occurred.[1]

Before 1995, Supreme Court decisions provided that a prison regulation could give rise to a liberty interest if it used mandatory language to constrain official discretion. *See, e.g., Ky. Dept. of Corrections v. Thompson*, 490 U.S. 454, 461-63 (1989); *Hewitt v. Helms*, 459 U.S. 460, 470-71 (1983); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  These cases led this circuit to find that prison rules created a protected interest in receiving a dictionary, *Spruytte v. Walters*, 753 F.2d 498 (6th Cir. 1985), and in visitation, *Long v. Norris*, 929 F.2d 1111 (6th Cir. 1991).  *See also Daugherty*, 935 F.2d at 787 n.7 (noting in dicta that departmental guidelines might have created liberty interest for prison visitors against strip-search absent probable cause).  In this case, the settlement agreement provides that strip-searches "may be made only on the basis of a reasonable suspicion," and purports to bind the director and his "agents" and "employees."

However, the Supreme Court rejected the "mandatory language" approach in *Sandin v. Conner*, 515 U.S. 472 (1995).  The Court reasoned that this approach interfered with prison administration by reducing flexibility and discouraging codification of prison management procedures and thereby oversight of prison staff.  *See id.* at 481-83.  The Court

—————————————

[1]This Court is unaware of cases in this circuit that address whether settlement agreements can give rise to liberty interests.  *But cf. Beo v. Dist. of Columbia*, 44 F.3d 1026, 1028-29 (D.C. Cir. 1995) (settlement agreement between District and lone inmate could not give rise to liberty interest); *Slezak v. Evatt*, 21 F.3d 590, 595 (4th Cir. 1994) (consent decree did not create liberty interest because it was not self-executing and lacked sufficiently mandatory language); *Smith v. Sumner*, 994 F.2d 1401, 1406 (9th Cir. 1993) (consent decree that provided merely procedural safeguards did not create liberty interest); *Rodi v. Ventetuolo*, 941 F.2d 22, 28 (1st Cir. 1991) (consent decree gave rise to liberty interest); *DeGidio v. Pung*, 920 F.2d 525, 535 (8th Cir. 1990) (consent decree did not constrain official discretion and thus did not create liberty interest); *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decree could not serve as basis for §1983 liability).

*Daugherty* court relied on dicta in *Long v. Norris*, 929 F.2d 1111 (6th Cir. 1991), that reasonable suspicion applied to searches of prison visitors to find that applicable direct authority of this circuit clearly foreshadowed its finding. *See Daugherty*, 935 F.2d at 784-85. Likewise, the court relied on the unanimity of precedent from other circuits as support for its finding that such precedent "unmistakably" indicated the unconstitutionality of the search at issue to a reasonable officer. *See id.* at 786-87. *Daugherty* is thus consistent with *Seiter* and does not compel a different result here.

We need not, and do not, opine on the Fourth Amendment standard to be applied to strip-searches of prison employees. We conclude merely that the standard to be applied to such searches was not clearly established in this circuit in 1999. In conclusion, we note that ample opportunities exist to establish that standard via other means, for example through actions for declaratory or injunctive relief. *See Seiter*, 858 F.2d at 1178. For all of the above reasons, we hold that defendants are entitled to qualified immunity as to Virgili's claimed violation of her Fourth Amendment rights.

B. *Violation of Fourteenth Amendment Rights*

Virgili also argues that a 1990 settlement agreement between OCSEA, the director of the ODRC, and other individuals gave her a Fourteenth Amendment liberty interest in freedom from strip-search unless certain predicates and procedures specified in the agreement were met. The district court did not address this issue. Defendants argue that a settlement agreement cannot give rise to a liberty interest and Virgili counters that the settlement agreement is tantamount to a state regulation. We need not decide these contentions because we find that, even if a settlement agreement can give rise to a liberty interest, Virgili's right under the Fourteenth

Virgili then sued defendants in their individual capacities pursuant to 42 U.S.C. §1983, claiming that the search violated her Fourth and Fourteenth Amendment rights. The district court granted defendants' motion for judgment on the pleadings, concluding that they were entitled to qualified immunity from suit because Virgili's right against the search was not "clearly established" at the time the search occurred.

## II. DISCUSSION

A. *Violation of Fourth Amendment Rights*

Whether qualified immunity applies to an official's actions is a question of law that this Court reviews *de novo*. *See Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir. 1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)); *see also Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). As a general matter, prison officials performing discretionary duties are shielded from liability for civil damages where their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Procunier v. Navarette*, 434 U.S. 555, 561 (1978) (prison officials receive qualified, not absolute, immunity from liability in § 1983 damages suit).

No Supreme Court decision nor any decision of this circuit establishes the rights of prison employees against a strip-search. The only case in this circuit to address the issue, *Ohio Civil Service Employees Assoc. v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988), held that the right of prison employees against strip-searches was not clearly established as of 1985. Nevertheless, Virgili argues that three decisions from other circuits clearly establish a right for these employees against strip-searches not based on "reasonable suspicion" of wrongdoing. *See McDonell v. Hunter*, 809 F.2d 1302, 1306 (8th Cir. 1987) (finding that reasonable suspicion standard applied to strip-search of prison employees); *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 490 (9th Cir. 1986) (reasonable suspicion standard applied to strip-search of police officer); *Sec. and Law Enforcement*

*Employees, Dist. Council 82 v. Carey,* 737 F.2d 187, 204 (2d Cir. 1984) (reasonable suspicion standard applied to strip-search of prison employees).

We disagree. This court held in *Seiter* that precedent from other circuits may "clearly establish" a right only in extraordinary cases:

> Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Id.* at 1177. This court specifically considered *McDonell* and *Carey* and concluded that they, taken together with two district court cases applying reasonable suspicion, were insufficient to establish a right against employee strip-searches in this circuit. *See id.* at 1177-78; *see also Adrow v. Johnson*, 623 F. Supp. 1085, 1088-89 (N.D. Ill. 1985); *Armstrong v. New York State Comm'r of Correction*, 545 F. Supp. 728, 731 (N.D.N.Y. 1982). Other cases from this circuit decided before and after *Seiter* confirm this approach. *See Marsh v. Arn*, 937 F.2d 1067, 1069 (6th Cir. 1991) (this Court "places little or no value on the opinions of other circuits in determining whether a right is clearly established"); *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988) ("We should focus on whether, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit."). Since

*Seiter*, the only court of appeals to consider the issue has concluded that the rights of prison employees against strip-searches still are not "clearly established." *See Scoby v. Neal*, 981 F.2d 286, 288-89 (7th Cir. 1992).

The contrary results of *Kirkpatrick* and *Scoby*, when added to the cases reviewed already by the *Seiter* court, do not create the extraordinary situation where decisions outside this circuit clearly establish a principle of law. They do not, given *Scoby*, point unmistakably to the unconstitutionality of Virgili's search. Nor can the "reasonable suspicion" standard be said to be clearly foreshadowed by applicable direct authority in this circuit. The only case considering the Fourth Amendment rights of prison employees, *Seiter*, implied in dicta that the reasonable suspicion standard, applied to prison visitors in this circuit, may be inappropriate for prison guards, whose duties necessarily expose them to more sensitive areas of prison facilities. *See Seiter*, 858 F.2d at 1177. In sum, it cannot be said that a reasonable officer confronted with *Seiter*, *Scoby*, and the cases Virgili cites would have no doubt that his conduct was unconstitutional.

Virgili also relies on a post-*Seiter* decision of this court, *Daugherty v. Campbell*, 935 F.2d 780 (6th Cir. 1991), which held that a right of prison visitors to be free from strip-searches absent reasonable suspicion was clearly established in 1988. *See id.* at 787. Virgili argues that the *Daugherty* court based its holding on the decisions of three courts of appeals finding that reasonable suspicion applied to prison visitor searches, and that three appellate decisions likewise support reasonable suspicion for prison employee searches here. Thus, Virgili argues, *Daugherty* compels a finding here that these decisions clearly establish her right against search absent reasonable suspicion.

Again, we disagree. The *Daugherty* court based its decision not only on favorable precedent from three other circuits but also on two additional elements not present here: (1) applicable direct authority from this circuit and (2) unanimity of outside precedent. Specifically, the