RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0180P (6th Cir.)
File Name: 03a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES POSTAL
SERVICE,

     *Plaintiff-Appellant,*

    *v.*

NATIONAL ASSOCIATION OF
LETTER CARRIERS, AFL-CIO,
    *Defendant-Appellee.*

No. 02-5050

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 00-02651—Julia S. Gibbons, District Judge.

Argued: May 8, 2003

Decided and Filed: June 5, 2003

Before: GUY, SUHRHEINRICH, and BATCHELDER,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Edward Himmelfarb, UNITED STATES
DEPARTMENT OF JUSTICE, CIVIL DIVISION,
APPELLATE SECTION, Washington, D.C., for Appellant.
Peter D. DeChiara, COHEN, WEISS & SIMON, New York,

1

New York, for Appellee. **ON BRIEF:** Edward Himmelfarb,
William Kanter, UNITED STATES DEPARTMENT OF
JUSTICE, CIVIL DIVISION, APPELLATE SECTION,
Washington, D.C., for Appellant. Peter D. DeChiara,
COHEN, WEISS & SIMON, New York, New York, for
Appellee.

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge. Plaintiff, United
States Postal Service (Postal Service), appeals from the grant
of summary judgment in favor of defendant, National
Association of Letter Carriers, AFL-CIO (NALC), upholding
an arbitration award that ordered the Postal Service to demote
a supervisory employee. On appeal, the Postal Service argues
that it was error for the district court not to vacate the
arbitration award as a violation of public policy. After review
of the record and the applicable law, we affirm.

**I.**

The arbitration award arose out of an incident between J.A.
Barnett, a letter carrier and member of the NALC, and a
customer services supervisor, Herbert Boyd, which occurred
on December 29, 1994. Barnett, a union branch president,
went to a postal service facility to talk with Boyd about
problems that the union steward claimed to have getting
access to information related to his union duties. They went
into the office of the station manager, Donna Williams, to
discuss the matter. Boyd began yelling, and Barnett indicated
he wanted to leave. Boyd backed up against the closed door
and said, "You move me." Barnett tried to leave twice more
and Boyd yelled, pointed a finger in his face, and repeated
that he would have to move him. Barnett was able to leave
after Williams intervened. The next week, Boyd was
promoted to station manager.

NALC grieved the incident under its collective bargaining agreement and the Joint Statement on Violence and Behavior in the Workplace. The Joint Statement was signed in 1992 by the Postal Service, the NALC, and other postal employee organizations after a former letter carrier shot to death four postal employees at the post office in Royal Oak, Michigan. The parties to the Joint Statement pledged to "firmly and unequivocally commit to do everything within our power to prevent further incidents of work-related violence." The Joint Statement provided: "there is no excuse for and will be no tolerance of violence or any threats of violence by anyone at any level of the Postal Service; and . . . there is no excuse for and will be no tolerance of harassment, intimidation, threats, or bullying by anyone." Postal employees who do not treat others with dignity and respect "will not be rewarded or promoted. Those whose unacceptable behavior continues will be removed from their positions." A national-level arbitration decision found the Joint Statement was a contractually enforceable agreement (the Snow Award).

After management denied the grievance, NALC appealed to arbitration. The arbitrator heard testimony from Boyd, Barnett, and Williams concerning the incident. Observing that Boyd came close to starting a fight, the arbitrator concluded that Boyd's gestures and words combined to constitute a clear violation of the Joint Statement. The arbitrator also found that Boyd's promotion to station manager, which was approved by Williams, treated Boyd's improper behavior with a "wink and a nod." As a remedy, the arbitrator ordered that:

> Manager Boyd will be reduced in position to supervisor, Customer Services, the position which he occupied before his promotion or to an equivalent position outside the bargaining unit. If he returns to his former position, it will be to a different station within the Memphis Office or to another office. Further he will not be "rewarded or promoted" for a period of five years from receipt of Award, the period which corresponds in time to the

pendency of the Union's grievance. Excluded from "rewards" are normal, across-the-board salary increases, the amounts of which constitute adjustments for inflation or "competitive salary" considerations.

The Postal Service was also ordered to place a copy of the award in Boyd's file and post an apology from the local postmaster.[1]

Seeking to vacate the award, the Postal Service brought this action arguing (1) that the arbitrator exceeded his authority under the collective bargaining agreement, and (2) that implementation of the award violated public policy because it would force the Postal Service to transgress both Boyd's constitutional due process rights and his statutory, predeprivation procedural rights. In granting summary judgment to NALC and denying summary judgment to the Postal Service, the district court found that the Postal Service did not have standing to assert Boyd's rights and that such claims were not ripe for review because it was unknown whether Boyd would assert a violation of those rights upon being demoted.

The only claim pursued by the Postal Service on appeal is that the district court should have vacated the arbitration award as contrary to public policy on the grounds that it would force the Postal Service to violate the statutory

---

[1]NALC argues at one point that this language does not actually require that Boyd receive a reduction in grade or pay because the Postal Service would have the option of moving him to "an equivalent position outside the bargaining unit." While it is not clear how this could be consistent with its position before the arbitrator or this court, we assume that the award in fact requires the Postal Service to demote Boyd to his previous position or a position equal to that previous position.

procedural protections it was obligated to provide to Boyd under 5 U.S.C. § 7513.[2]

## II.

The district court's decision regarding jurisdiction is reviewed *de novo*. *Charter Township of Muskegon v. City of Muskegon*, 303 F.3d 755, 759 (6th Cir. 2002). Likewise, our review of a decision rejecting a public policy challenge to an arbitration award is also *de novo*. *MidMichigan Reg'l Med. Ctr. v. Prof. Employees Div. of Local 79*, 183 F.3d 497, 501 (6th Cir. 1999). We may affirm a decision of the district court if correct for any reason, including one not considered below. *See Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985).

One requirement for Article III standing is that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Int'l Union v. Dana Corp.*, 278 F.3d 548, 559 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). NALC argues that implementation of the award would benefit, not injure, the Postal Service by deterring unacceptable behavior by other employees. Our concern, however, is whether there is a "case" or "controversy" for Article III purposes. We are satisfied that to the extent the Postal Service claims the award will force it to violate a federal statute, it is asserting its own rights and has Article III standing.

Although the question of ripeness bears a close affinity to questions of standing, ripeness focuses on the timing of the action rather than on the party that brings the suit. *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th

---

[2]The Postal Service has abandoned any claim that the arbitrator exceeded his authority under the CBA, or that the award would require it to violate Boyd's constitutional due process rights. *See Enertech Elec. Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir. 1996).

Cir. 1998). The factors to be weighed in deciding whether to address the question include: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings. *Id.* Applying these factors, we find that this case is ripe for review. The Postal Service is faced with a reasonable threat of liability if compliance with the arbitration order violates the CSRA. Also, the record is sufficiently developed to allow us to consider the legal question before us on appeal.

This brings us to the issue pressed by the Postal Service; whether the arbitration award should be vacated as contrary to public policy. "[W]hen an arbitration award is challenged on public policy grounds, the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator." *Bd. of County Comm'rs v. L. Robert Kimball & Assocs.*, 860 F.2d 683, 686 (6th Cir. 1988). Public policy must be determined from laws and legal precedents, not general considerations of public interest. *E. Associated Coal Corp. v. UMWA, Dist. 17*, 531 U.S. 57, 67 (2000) (quoting *W.R. Grace & Co. v. Local Union No. 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766 (1983)).

The relevant question is not whether the underlying conduct, here Boyd's alleged violation of the Joint Statement, violates public policy, but rather whether ordering the Postal Service to demote Boyd because he should not have been promoted would violate an explicit public policy. *See Interstate Brands, Corp. v. Chauffeurs Local Union No. 135*, 909 F.2d 885, 893 (6th Cir. 1990) (upholding arbitration award reinstating delivery driver charged with drug offenses for off-duty conduct). That is, would it force the Postal Service to violate the law. *See, e.g., Am. Postal Workers Union, AFL-CIO v. United States Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982) (award reinstating air traffic controller who participated in strike could not be enforced

because federal statute prohibited employment of one who had participated in a strike against the government).

The Postal Service argues that it cannot comply with the arbitration award without violating provisions of the Civil Service Reform Act of 1978 (CSRA). 5 U.S.C. § 7511-13. Under the Postal Reorganization Act, certain preference-eligible postal employees, including supervisory employees with over one year of continuous service, are covered by the CSRA's provision for administrative and judicial review of adverse personnel actions. 39 U.S.C. § 1005(a)(4). Adverse personnel actions are defined as removal from federal employment, suspension for more than 14 days, a reduction in grade, a reduction in pay, and a furlough of 30 days or less. 5 U.S.C. § 7512. The procedural protections are set forth in 5 U.S.C. § 7513(b), which states that an employee against whom an action is proposed is entitled to: (1) at least 30 days' advance written notice stating the specific reasons for the proposed action; (2) a reasonable time to answer and provide affidavits or other evidence in support of that answer; (3) to be represented by an attorney; and (4) "a written decision and the specific reasons therefor at the earliest practicable date." *Id.* at § 7513(b)(4). The agency may provide a hearing in lieu of or in addition to the opportunity to answer. *Id.* at § 7513(c). Finally, the statute provides that an employee is also entitled to appeal the action to the Merit Systems Protection Board (MSPB) under 5 U.S.C. § 7701. *Id.* at 7513(d).[3]

All indications to date, including representations made by counsel at oral argument, are that the Postal Service has yet to take adverse action against Boyd as required by the arbitration award. The Postal Service argues first that the award directed it to demote Boyd summarily and without regard for the

---

[3]Substantially similar procedural protections are found in the Postal Service's Employee & Labor Relations Manual (ELM), which is also adopted as an agency regulation. *See* 39 C.F.R. § 211.2(a)(2) and http://www.postalworkersonline.com/elm.htm.

CSRA's procedural requirements. On the contrary, the award does not specify the manner by which the remedy is to be implemented. We find that the Postal Service remains capable of strictly complying with the statute's requirements, beginning with written notice of the proposed adverse action that specifically states the arbitration award as the basis for the proposed action.

Next, all but conceding that it could strictly comply with the statute, the Postal Service argues that compliance with those procedural protections would be a "sham" and therefore a violation of the CSRA, because it would not provide Boyd with "meaningful" predeprivation process. In particular, the Postal Service relies on the framework set out by the MSPB for reviewing the reasonableness of an agency-imposed penalty in light of a nonexclusive list of relevant factors. *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 306 (1981). Neither those factors, nor the framework set out in *Douglas* for weighing them, represent a statutory mandate under the CSRA. Further, the arbitration award does not deprive Boyd of his rights under the CSRA to appeal his demotion to the MSPB.

In an appeal to the MSPB, Boyd would have the right to a full evidentiary hearing and the right to be represented by counsel. 5 U.S.C. § 7701(a)(1) and (2). The MSPB has authority to reverse the agency action if Boyd can show procedural error would likely have a harmful effect on the outcome of his case before the agency. 5 U.S.C. § 7701(c)(2)(A); *see also Stephen v. Dep't of Air Force*, 47 M.S.P.R. 672, 681 (1991). The MSPB also has the authority to determine what effect, if any, the arbitration decision should be given if Boyd were to decide to appeal his demotion. *See Aulik v. United States Postal Service*, 1 M.S.P.R. 501 (1980); *Westbrook v. Dep't of Air Force*, 77 M.S.P.R. 149, 155 (1997). As the NALC concedes, any relief granted to Boyd by the MSPB would take precedence over the arbitration award. Thus, we find that implementation of the

arbitration award would not force the Postal Service to violate the CSRA and therefore is not contrary to public policy.

**AFFIRMED.**[4]

---

[4] Although not the basis of our decision, there appears to be merit to the argument that the Postal Service waived its public policy challenge to the arbitration award by failing to raise it during arbitration. *See United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, No. 02-1159, 2002 WL 31455333 (4th Cir. Nov. 5, 2002) (unpublished disposition). Just as the Fourth Circuit noted, however, that waiver would not prevent Boyd from raising it in an appeal to the MSPB. *Id.* at **2 n.1.