*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0398p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PATRICK BARRETT,

                *Plaintiff-Appellee,*

    *v.*

STEUBENVILLE CITY SCHOOLS, RICHARD LUCCI, in his individual capacity only, DANIEL SPAHN, in his official capacity only, RUTH ANN BRUZZESE, in her official capacity only, WILLIAM KERR, in his official capacity only, WILLIAM HENDRICKS, in his official capacity only, and RICHARD BEAL, in his official capacity only,

                *Defendants-Appellants.*

No. 03-4373

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00470—George C. Smith, District Judge.

Submitted: August 11, 2004

Decided and Filed: November 15, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** John C. Albert, CRABBE, BROWN & JAMES, Columbus, Ohio, for Appellants. Rayl L. Stepter, Columbus, Ohio, for Appellee.

    KEITH, J., delivered the opinion of the court, in which MARTIN, J., joined. ROGERS, J. (pp. 8-9), delivered a separate dissenting opinion.

_____

## OPINION

_____

    DAMON J. KEITH, Circuit Judge. Defendants-Appellants Steubenville City Schools, Superintendent Richard Lucci, in his individual capacity only, and Board Members, Daniel Spahn, Ruth Ann Bruzzese, William Kerr, William Hendricks, and Richard Beal, in their official capacities only, appeal the district court's denial of qualified immunity in this action claiming a deprivation of plaintiff's First and Fourteenth Amendment rights in defendants' failure to offer plaintiff a permanent teaching position. For the reasons that follow, we **AFFIRM** the district court's decision.

1

## I. BACKGROUND

Plaintiff-Appellee, Patrick Barrett ("Barrett"), received his Bachelor's degree in education in 1997 and was subsequently certified to teach elementary education. In November 1998, Wells Elementary School ("Wells"), a Steubenville City School, hired Barrett as a substitute teacher. Beginning in January 1999, Barrett substituted for an eight-week term, taking the place of a first grade teacher on maternity leave. The principal at Wells, John Holub ("Holub"), then offered Barrett a substitute teaching position for the remainder of the school year to take the place of a fourth grade teacher on maternity leave. Barrett accepted the position with the hope of receiving a full-time teaching contract for the following school year.

In May 1999, Barrett was scheduled to be interviewed for a full-time teaching position with Steubenville City Schools. Prior to the interview, Holub advised Barrett that Richard Lucci ("Lucci"), who would be assuming the position of Superintendent during the next school year, would not give Barrett a teaching contract unless his son attended Steubenville City Schools. From the time that he was in kindergarten, Barrett's son had attended All Saints, a Catholic school. After Barrett's conversation with Holub, Barrett was interviewed by Steubenville City Schools administrators, including Lucci, then-Assistant Superintendent. Lucci asked Barrett where his son would be attending school the following year, and Barrett told him that his son would finish the eighth grade next year at All Saints. After the interview, Barrett had another conversation with Holub, who again indicated that Lucci would not give Barrett a teaching contract until he moved his son out of All Saints and into Steubenville City Schools.

During the summer of 1999, two teaching positions became available. Barrett did not receive an offer for either position. In fact, a teacher who had not substituted with Steubenville City Schools was hired, despite a tradition within the school district to hire teachers who had previously substituted.

In August 1999, Barrett again interviewed with now Superintendent Lucci and informed him that his former job had recalled him back to work and he needed to make a decision. Barrett asked Lucci for a full-time teaching contract with Steubenville City Schools. Barrett claims that Lucci told him, "I can't promise a job if someone new is in this position, but if I am, you have a future here because you do such a good job." Barrett claims that he relied on this promise in declining to return to his full-time position with his former employer and instead served for another year as a substitute teacher.

During the 1999-2000 school year, Holub often expressed to Barrett Lucci's disapproval of Barrett's son attending private school. Barrett claims that in May 2000, Holub once again told Barrett that he would never receive a full-time teaching contract until he enrolled his son in Steubenville City Schools. Also in May 2000, Lucci informed Barrett that he should consider moving his son to public school for at least one year, insisting that Barrett's son would like it. Barrett claims that he was under such pressure, especially after turning down full-time employment with his former employer, that during the summer he enrolled his son in Steubenville High School for the 2000-01 school year. Even after he enrolled his son in Steubenville City Schools, Barrett was not offered teaching positions when they became available.

In August 2000, Barrett again went to speak with Lucci about his position. Lucci asked Barrett how his son felt about changing schools, and Barrett replied that his son was unhappy. Lucci informed Barrett that "it would be held against him" if his son did not attend Steubenville High School. Lucci also explained to Barrett that the school board liked for teachers to enroll their children in the public school system because it "looked good" to those parents whose children attended Steubeville City Schools. Lucci stated that if Barrett returned as a long-term substitute, then he would be given a full-time contract after his sixty-day period was complete.[1]

---

[1] Steubenville City Schools had a policy or practice that granted full-time contracts to teachers who taught for at least sixty days in the same classroom. J.A. at 129.

Barrett began the 2000-01 school year as a full-time substitute teacher with the expectation that he would receive a full-time teaching contract. Barrett, however, reconsidered his decision regarding his son's education, removed him from Steubenville High School, and enrolled him in Catholic Central High School. On September 29, 2000, Barrett met with Lucci and the Assistant Superintendent. Barrett claims that Lucci told him that he was being removed from his position as a fourth grade substitute teacher at Wells. When Barrett questioned Lucci about the reason for his removal, Lucci told him that he was being disloyal. Lucci also expressed that he thought public high school would be better for Barrett's son. Barrett then reminded Lucci of his agreement to grant him a full-time contract after Barrett completed his sixty days of teaching in the classroom. Lucci became irate, denied ever making such a promise, and ordered Barrett to clean out his classroom that day.

Consequently, in June 2001, Barrett filed suit in the district court against Defendants-Apellants Steubenville City Schools, Superintendent Lucci, in his individual capacity, and Board Members Spahn, Bruzzese, Kerr, Hendricks, and Beal, in their official capacities only. Barrett asserted several claims, including: civil rights violations under 42 U.S.C. § 1983, religious discrimination under Ohio law, breach of contract, promissory estoppel, and tortious interference with present contractual relations or prospective contractual relations or both. Defendants filed a motion for summary judgment. The district court granted Defendants' motion as to Barrett's federal and state claims of religious discrimination and as to Barrett's claim of equal protection and free exercise of religion under 42 U.S.C. § 1983. The district court denied, however, defendants' motion as to Barrett's parental rights claim under § 1983 and the remaining state law claims. Defendants timely filed this appeal.

The only issue before us on appeal is whether Lucci is entitled to qualified immunity. In answering that question, we must determine whether the district court erred in finding that there is a clearly established constitutional right for parents to direct the education of their children and that Lucci's actions violated that right. For the reasons that follow, we find that the district court did not err in its conclusion.

## II. DISCUSSION

A denial of summary judgment is ordinarily not a final judgment and therefore not reviewable on appeal. *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002). The present case, however, involves a decision by the district court to deny qualified immunity to a public official accused of violating plaintiff's constitutional rights. "[D]istrict court denials of qualified immunity may be appealed as collateral orders where (1) the defendant is a public official asserting the defense of qualified immunity, and (2) the issue appealed concerns not which facts the parties might be able to prove, but whether certain alleged facts reflect a violation of clearly established law." *Id.* (citations omitted). Because Defendants are not challenging the facts but rather claim that they did not violate the law, the jurisdictional requirements are met in the present case.

Whether qualified immunity applies to an official's actions is a question of law that this court reviews *de novo*. *Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001). Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense is raised, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The plaintiff, thus, bears the ultimate burden of proof to show that the defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). On appeal, in viewing the facts in favor of the plaintiff, we must decide first whether a constitutional violation occurred and second whether that right was clearly established. *Hoover*, 307 F.3d at 465.

## A.      Violation of Constitutional Right

"To state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law." *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). In this case, Barrett has filed a complaint where the first claim for relief is entitled "Violation of Civil Rights, 42 U.S.C. § 1983." Second Amended Complaint ¶ 10. In his complaint, under this particular claim, Barrett alleged that he was told by Defendant Lucci "that the school board wanted the children of its teachers enrolled in Steubenville City schools." *Id.* Barrett alleged that Holub told him that "Lucci was impressed with Plaintiff Patrick Barrett's qualifications but that he would not be hired for a full-time position because Plaintiff's son attended a Catholic school." *Id.* ¶ 8. Barrett also alleged that he was denied full-time teaching positions while his son was enrolled in private school, but once he enrolled his son in Steubenville City Schools, Lucci promised him a full-time contract. *Id.* ¶ 12. Finally, Barrett alleged that, after Barrett removed his son from public school and re-enrolled him in private school, Lucci terminated Barrett for being disloyal. *Id.* ¶ 13. After citing the factual allegations, Barrett then indicated that the Defendants deprived him of not only his First Amendment right to freedom of religion, but also of "equal protection under the Fifth and Fourteenth Amendments to the United States Constitution." *Id.* ¶ 14.

Appellants argue that these allegations and legal assertions are insufficient to show a violation of Barrett's constitutional right to direct the education of his child. To support their argument, Appellants cite our recent decision in *Spadafore v. Gardner*. In *Spadafore*, we reviewed a dismissal of § 1983 claims against defendants in their individual capacity. 330 F.3d at 852. We found that the plaintiffs' claims of § 1983 violations "were not adequately set forth in their complaint." *Id.* at 853. In so finding, we noted that "nowhere in the complaint [wa]s § 1983 specifically invoked against the individual defendants." *Id.* at 852. We also indicated that "[f]rom the language of the complaint, one cannot ascertain which substantive constitutional rights were allegedly violated. Nor was this clarified in the [plaintiffs'] response to the defendants' motion for summary judgment." *Id.* at 853.

Here, the facts are clearly distinguishable. First, Barrett provided a detailed description of the alleged violations. He asserted that Lucci not only conditioned his full-time employment on where his son attended school, but also terminated him once his son was removed from public school. Barrett specifically pleaded these allegations under the claim for § 1983 violations. Additionally, unlike the plaintiff in *Spadafore*, Barrett clarified any possible confusion in his response to Defendants' motion for summary judgment.[2] We, therefore, find that the facts as alleged by Barrett set forth a claim that Lucci violated his constitutional right to rear his child.

## B.      Constitutional Right Clearly Established

Once we have found a violation of a constitutional right under the plaintiff's facts, we must then determine if that right was clearly established. *Hoover*, 307 F.3d at 465. We look to whether a reasonable official would understand that his actions violated that right. *Id.* at 468. This court has emphasized that "to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself." *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). In an extraordinary case, decisions of other circuits may be used to clearly establish a principle of law if they "point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.* A few admittedly novel opinions from other circuit or district courts are not enough to form the basis for a clearly established constitutional right in the Sixth Circuit. *Id.*

---

[2] In Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment, the first argument heading is entitled "Material Issues of Fact Exist as to Plaintiff's § 1983 Claim of Infringement of His Fundamental Right in the Rearing of His Child as Protected by the Equal Protection Clause and the First Amendment Free Exercise Clause." J.A. at 135.

Here, the district court correctly determined that the right to direct the education of one's child was clearly established. Both the Supreme Court and this court have repeatedly recognized that parents have a fundamental right to raise their children, including directing their children's education. *See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 400 (1923) (recognizing the right of "the parent to give his children education suitable to their station in life"); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (striking down state law that required parents to send their children to a public school for a period of time because it "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control"); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) (finding that "primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Zelman v. Simmon-Harris*, 536 U.S. 639, 680 n.5 (2002) (Thomas, J., concurring) (emphasizing that "[t]his Court has held that parents have the fundamental liberty to choose how and in what manner to educate their children"); *Ohio Ass'n of Indep. Sch. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996) (recognizing that because parents have a constitutional right "to direct their children's education," organization has standing to bring claim on behalf of parents); *Johnson v. City of Cincinnati*, 310 F.3d 484, 449 (6th Cir. 2002) (stressing that "[b]oth Supreme Court precedent and our national tradition suggest that a family member's right to participate in child rearing and education is one of the most basic and important associational rights protected by the Constitution"). More specifically, the Supreme Court has also indicated that "parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction . . . ." *Runyon v. McCrary*, 427 U.S. 160, 178 (1976). Thus, it is clearly established that parents have a fundamental right to direct the education of their children.

That Barrett has the fundamental right to educate and raise his children, in and of itself, does not provide Lucci with clearly established law that his actions violated this right. There is, however, precedent from both the Supreme Court and the Sixth Circuit that makes clear that Lucci's actions violated Barrett's fundamental parental right. In *Perry v. Sinderman*, the Supreme Court found unconstitutional the nonrenewal of a teaching contract on the basis of a teacher's exercise of a constitutionally protected interest. 408 U.S. 593, 597 (1972) (stating that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"). We have decided several cases applying the principle of law set forth in *Perry*. In *Littlejohn v. Rose*, we found that the refusal to rehire a non-tenured teacher violated the constitutionally protected right of privacy if such denial was based on the teacher's divorce. 768 F.2d 765, 769-70 (6th Cir. 1985) ("It is clear from the Supreme Court's analysis in *Perry* that a person's involvement in activity shielded by the constitutionally protected rights of privacy and liberty constitutes an impermissible reason for denying employment."). In *Adkins v. Board of Education of Magoffin County, Kentucky*, plaintiff was denied employment with a school board simply because of her marriage to a person who her employer disliked. 982 F.2d 952 (1993). In finding that the district court erred in granting defendants' motion to dismiss, we specifically stated that "[w]hile the plaintiff had no contractual right to a job, she could not be deprived of her public employment for exercising a constitutional right." *Id.* at 955. Similarly, in *Montgomery v. Carr*, we found that "[i]f the *only* motivation for a public official in taking some adverse employment action against a public employee is the public employee's protected activity, then regardless of the level of scrutiny applied, such action is unconstitutional." 101 F.3d 1117, 1127 (1996). Therefore, based on precedent specific to this court, the government cannot deny someone employment simply because that person is exercising his fundamentally protected right.[3]

---

[3] The dissent argues that a "public employer can insist that employees waive certain rights," *dissent* at 8, and summarizes the ultimate holding of this court in *Montgomery* to support its assertion, *id.* (noting that "this court upheld a school district's anti-nepotism policy, which required the transfer of one employee because that employee was married to another employee, despite the right to marry"). While our ultimate holding in *Montgomery* found that there were legitimate reasons for a school's anti-nepotism policy, the dissent overlooks the court's language marking as unconstitutional a public employer's adverse employment action based only on a protected right. Here, we have just that. Unlike the case in *Montgomery*, we are not deciding this case on the merits; in viewing the facts in favor of Barrett, he was denied employment *only* because he was exercising his right to educate his son in a manner of his choice.

In this case, Barrett made a decision to send his son to private school. Barrett's choice in directing his son's education is activity shielded by his constitutionally protected right of liberty. The Defendants do not dispute that. Because it has been clearly established that one's involvement in constitutionally protected activity cannot be the sole basis for denying public employment, any reasonable official would know that denying employment based on a parent's constitutional right to direct his child's education is a violation of the law.

Nevertheless, Defendants argue that "[t]here is no clearly established line of cases out of the Supreme Court or this Circuit which establish that dictating where public school employees send their children to school violates the employees' parental rights." Appellants' Br. 13. Defendants would have us find that the district court erred by relying on other circuits in its analysis.[4] The cases referenced by the district court point unmistakably to the unconstitutionality of the conduct complained of and are clearly foreshadowed by applicable direct authority in the Supreme Court. *See, e.g., Pierce*, 268 U.S. 510; *Perry*, 408 U.S. 593. While it was therefore permissible for the district court to rely on these cases in finding that the law was clearly established, it was unnecessary. We do not adopt the district court's analysis,[5] for we need not rely on law outside of our jurisdiction to find that a clearly established right exists.

The Supreme Court has instructed that qualified immunity does not require "the *very action in question* [to] ha[ve] previously been held unlawful," but rather "*in the light of pre-existing law* the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Defendants cannot escape liability by arguing that no precedent exists that specifically enunciates a law that a public school official cannot deny someone employment solely because that person chooses to his child to a private school.[6] As aforementioned, Barrett has a constitutionally protected fundamental right to educate his child at the school of his choice. There is also a clearly established law that forbids employers from denying one employment based only on "person's involvement in activity shielded by the constitutionally protected rights of privacy and liberty." *Adkins*, 982 F.2d at 955 (citing *Littlejohn*, 768 F.3d at 769-70). In accordance with these fundamental principles of law, Lucci cannot obtain qualified immunity by claiming that no clearly established right existed.

## III. CONCLUSION

In sum, we reiterate that parents have a constitutionally protected liberty interest in raising and directing the education of their children. A state employer cannot condition employment upon the waiver of that right. For these reasons, we AFFIRM the judgment of the district court in denying Lucci qualified immunity.

---

[4] In its opinion, the district court cited precedent from the Fifth and Eleventh Circuits to support the proposition that dictating where an employee of the school district can send his child to school infringes on the familial rights of that teacher. *See Fyfe v. Curlee*, 902 F.2d 401, 403 (5th Cir. 1990) (holding that retaliation against a school employee who placed her child in private school violates rights "protected under the First Amendment and the penumbra of familial privacy rights recognized by the Supreme Court"); *Stough v. Crenshaw County Bd. of Educ.*, 744 F.2d 1479 (11th Cir. 1984) (holding that a school board policy prohibiting employees from sending their children to private schools interfered with employees' constitutional right to control the education of their children).

[5] "We may affirm a decision of the district court if correct for any reason, including one not considered below." *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

[6] This court has, in fact, addressed this issue. *See Janes v. Bardstown City Sch. Bd. of Educ.*, 97 F.3d 1452, 1996 WL 536794 (6th. Cir. Sept. 20, 1996). In *Janes*, a teacher sued the public school system alleging that she was not considered for a teaching position because her children attended parochial schools. We held that summary judgment was not warranted when there are facts in dispute as to whether "defendants violated Mrs. Janes' federal constitutional right to direct the education of her children." *Id.* at **1.

---

**DISSENT**

---

ROGERS, Circuit Judge, dissenting.  Qualified immunity protects the private funds of an official sued in his individual capacity for actions that have not been clearly established to be unconstitutional, even if the actions are later determined indeed to have been unconstitutional.  Even assuming that the termination of a public school teacher for not sending his children to the public schools is unconstitutional,[1] it is not clearly established to be unconstitutional.  This is because the legal conclusion results from a balance that has not been definitively made by the Supreme Court, the Sixth Circuit, or even by federal courts in general.

The majority concludes that "any reasonable official would know that denying employment based on a parent's constitutional right to direct his child's education is a violation of the law."  And yet, such a right has not been articulated in the Supreme Court or this circuit.  Rather, the majority constructs this right from the parts of two others: the fundamental right of a parent to raise his or her children and direct their education, which is clearly established, and a right the majority describes as a right not to be denied government employment because of a decision to exercise a fundamentally protected right.  This second "right" is not a right in all contexts, and has certainly not been clearly established in the context presented by this case.

Public employees can be required to give up some of their constitutional rights, although certainly not all of them.  The public employer can insist that employees waive certain rights, but cannot insist that employees waive others.  It is concededly clearly established that public employers cannot require their employees to vote a certain way, to go to religious services, or to do a number of other things that are unrelated to the public employment.  This explains the cases relied upon by the majority, such as *Perry v. Sindermann*, 408 U.S. 593 (1972) (public criticism of college's board of regents), *Littlejohn v. Rose*, 768 F.2d 765 (6th Cir. 1985) (divorce), and *Adkins v. Board of Education*, 982 F.2d 952 (6th Cir. 1993) (marriage to a particular person).  On the other hand, public employers *can* require employees to give up some constitutional rights, such as the right to read the newspaper all day, or the right to proselytize all day, where the restriction is sufficiently related to the purpose of the employment.  For instance, in *Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996), a case relied upon by the majority opinion, this court upheld a school district's anti-nepotism policy, which required the transfer of one employee because that employee was married to another employee, despite the right to marry.  And in *Flaskamp v. Dearborn Public Schools*, 385 F.3d 935 (6th Cir. 2004), this court upheld a school board's decision to deny tenure to a teacher who had a relationship with a student, despite the right to intimate association.

Telling a teacher where his child may go to school may fall somewhere in between.  Just the two clearly established propositions, (1) that parents have a right to send their children to nonpublic schools and (2) that public employers cannot make employees give up all their constitutional rights, do not, even together, clearly establish the conclusion (3) that public school employers cannot require teachers to put their own children in the public schools.  Conclusion (3) may result from a careful examining and balancing of the interests in (1) with the need of schools to have teachers demonstrate commitment to the public schools, but it cannot be said that such a conclusion is clearly established.

---

[1] Although, for purposes of this dissent, I assume that Barrett's termination was unconstitutional, this is not necessarily the case.  If this court were to apply a test similar to that applied in *Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996), a case addressing an anti-nepotism policy and the right to marry, this court could conclude that only rational basis scrutiny was warranted for Barrett's claim.  *See id.* at 1124-29.  And under a rational basis analysis, the government's interest in eliminating the inference that public schools are of lesser quality than private schools, an inference that can be drawn when a public school teacher sends his child to private school, may be sufficient to justify the requirement imposed on Barrett.

Under the proper test, in order for a right to be considered clearly established, it must be "'so clearly established when the acts were committed that *any* officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2003) (quoting *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987)). Or, as this court has said elsewhere, "'[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'" *Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) (emphasis in original) (quoting *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). On the facts of this case, it is not clear that "every like-situated, reasonable government agent" would have clearly understood that the right to direct the education of one's children should be combined with a balancing test used to determine what rights a public employer can require a public employee to give up, with the result that a public school can not require a public school teacher to send his or her child to that public school. Accordingly, Superintendent Lucci should be accorded qualified immunity in this case.